IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| CATHERINE BROWER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LUBBOCK COUNTY HOSPITAL | ) |
| DISTRICT d/b/a University Medical Center, | ) |
| | ) |
| Defendants. | ) Civil Action No. 5:22-CV-003-C |

## ORDER

On this date, the Court considered Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment, along with the respective Responses.[1]

## I. BACKGROUND

Plaintiff was employed by Defendant in the capacity of a staff registered nurse in the STAR Center (which provided intake for outpatient surgery and pre-registration for other types of surgery). On March 16, 2020, Defendant suspended all non-essential surgical procedures as part of the COVID-19 pandemic response and due to the Governor's executive orders. Defendant had to scramble to determine how to redeploy its nursing staff. One thing Defendant did was create a COVID-19 call center that was staffed by registered nurses as part of their job duties. The nurses in the call center would answer calls from the public about COVID-19. Defendant and the various supervisors attempted to spread the work hours at the call center

---

[1] Leave was not first sought prior to the filing of Plaintiff's Reply. Thus, the Reply was not considered.

among all the nurses competing for work hours during a period when most non-essential work had been suspended.

It is undisputed that Plaintiff suffers from Rheumatoid Arthritis ("RA") and at the time was taking a medication to treat her RA that further caused her to have a compromised immune system. Plaintiff also suffers from dyspnea (shortness of breath) and heart disease, along with high blood pressure.

As Defendant attempted to re-deploy its nursing staff to medical/surgical units in April of 2020 (still early in the pandemic response), Plaintiff informed Defendant that she was immunocompromised and that she sought an alternative position. Defendant informed her that there were no exceptions to putting registered nurses on the floor, except for pregnant women. Plaintiff spoke with Defendant's Disability Management Coordinator, Sharon Doyle, and Doyle informed Plaintiff that the COVID-19 issues were under development and that Defendant had never had to deal with such issues and was "learning" as the pandemic went forward. Plaintiff nevertheless filled out an ADA Accommodation Form, which she returned to her supervisor on April 17, 2020, along with her doctors' notes. In the accommodation request, Plaintiff's doctors requested that Plaintiff not be assigned to a position requiring direct patient interaction due to her high risk for developing severe illness from COVID-19. After review, Defendant agreed that Plaintiff was not able to meet the requirements of floor nursing work and informed her that she would not be required to work as a floor nurse.

Plaintiff requested a full-time assignment to the call center. Doyle rejected that option because the call center duties were not a permanent position and Doyle believed it "would only be a temporary fix and then we would be right back to square one." (Pl.'s App. 116.) Defendant

2

directed Plaintiff to consult with its Nurse Recruitment Department and the Human Resources Department in an effort to find her a vacant position.[2] During the search, Plaintiff was placed on temporary administrative paid leave for 10 days.  The efforts to find Plaintiff a vacant position that would accommodate her health needs and prevent contact with possible COVID-19 infected individuals proved unfruitful.

Plaintiff alleges that Defendant misinterpreted her doctors' restrictions such that Defendant attempted to locate a position that entailed no contact with other staff or employees, or anyone who could be a vector for COVID-19.  Plaintiff alleges that her doctors' requested restrictions simply stated that she not be assigned to direct patient care.[3]  After Defendant's search for any open positions did not locate any that would fit Plaintiff's needs, Defendant terminated Plaintiff's employment.  Plaintiff requested that Defendant reconsider its decision by allowing her to return to the STAR Center if she could get her doctors to modify their opinions and allow it.  Defendant's staff expressed reservations about the propriety of Plaintiff's doctors changing their opinions to suit Plaintiff's objectives.  In the end, Defendant left open the possibility of any consideration of revised medical information.[4]  Plaintiff filed to charges of discrimination with the Equal Employment Opportunity Commission.  The first charge was filed

---

[2]It is unclear if any vacate positions existed during a time when most employment opportunities dissolved during the early period of the pandemic.

[3]A mistaken belief by an employer as to any employee's work restrictions cannot amount to cognizable discriminatory motive.

[4]There is no admissible evidence, beyond speculation, as to how Plaintiff's doctors might have "modified" their requested restrictions upon her work and contact with others.

following her termination and the second was filed in February of 2021 after she was not re-hired for several position to which she applied.

Plaintiff has brought claims under the Americans with Disabilities Act for discriminatory employment termination, failure to reasonably accommodate, and failure to hire for available positions. Defendant seeks summary judgment on Plaintiff's claims and Plaintiff seeks summary judgment on Defendant's affirmative defenses of undue hardship and mitigation of damages.

## II. STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (internal quotes omitted). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward, after adequate time for discovery, with significant probative evidence showing a triable issue of fact. Fed. R. Civ. P. 56(e); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue for trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429

(5th Cir. 1996) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). To defeat a properly supported motion for summary judgment, the non-movant must present more than a mere scintilla of evidence. *See Anderson*, 477 U.S. at 251. Rather, the non-movant must present sufficient evidence upon which a jury could reasonably find in the non-movant's favor. *Id.*

### III.  DISCUSSION

**Failure to Accommodate**

Plaintiff asserts a claim that Defendant failed or refused to make a reasonable workplace accommodation for her disability. "A prima facie case for failure to accommodate requires that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017) (internal quotations omitted). An employer, however, is not required to: (a) relieve an employee of essential functions of the position or create a new position. *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999).

The Court finds that the evidence demonstrates that Plaintiff was at high risk for developing severe illness resulting from COVID-19 due to her multiple comorbid conditions. Further, the evidence clearly shows that Plaintiff and her doctors requested that she not be assigned to work as a floor nurse. Although Plaintiff requested to be assigned to call center duties, Defendant has pointed the Court to evidence indicating that the call center assignment was not a "position" and was only a temporary duty that constituted a marginal function of the scope of nurses' job duties. Moreover, the call center was not a separate, recognized department—it was simply staffed by the nurses as an opportunity for them to continue to work

5

shifts during the early days of the COVID-19 pandemic when many main nursing duties were placed on hold. Further, Plaintiff has failed to direct the Court to admissible evidence that shows any available, vacant "position" dedicated solely to the call center. Such a failure is fatal to Plaintiff's claim. Defendant was not required, under the law, to create a special position just for Plaintiff. *See Gonzalez v. United Parcel Serv.*, 777 Fed. App'x. 735, 738 (5th Cir. 2019). The crux of this lawsuit is Plaintiff's subjective belief that the call center duties were "open positions" that could be filled permanently. The evidence does not support such a claim. In fact, Plaintiff's response brief to Defendant's Motion clearly states "UMC hired no nurse *only* to be assigned to the call center." (Pl.'s Resp. Br. at 19.) In essence, what Plaintiff sought was not to be treated equally because of her alleged disabilities. Rather, her requested accommodation was the creation of a new position as a full-time call center nurse and to be preferentially placed into such a position. There is no evidence before the Court that such a position existed, or that she was denied such an available position. Instead, the evidence clearly shows that the call center staffing was simply a duty that nurses could rotate into to obtain needed hours of pay during an uncertain time and an unprecedented pandemic. Defendant sought to prioritize call center duty for certain nurses that were deemed essential to Defendant's function.[5]

Defendant is entitled to summary judgment on this claim for the reasons argued in its Motion.

---

[5] The evidence indicates that ICU, med surgical, and OR nurses were given "first priority" and that STAR Center nurses were given "second priority" for staffing the call center. It is undisputed that Plaintiff fell into the latter category. The evidence further indicates that Defendant prioritized nurses with direct patient care because those were the nurses Defendant was most concerned about retaining in view of the difficulties COVID-19 posed. (Def.'s App. at 57.)

### ADA Discrimination

In an action for discriminatory termination under the ADA, an employee has the option to present direct evidence of discrimination or proceed under the *McDonnell Douglas* burden-shifting analysis. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). That burden-shifting analysis first requires the plaintiff to establish a prima facie case of discrimination. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). To establish a prima facie case, the plaintiff must prove that: (1) she has a disability; (2) she was qualified for the job she was working; and (3) she was subject to an adverse employment decision on account of her disability. *LHC Grp., Inc.*, 773 F.3d at 697 (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). If the plaintiff is successful in meeting this burden, then the defendant must provide a legitimate, nondiscriminatory reason for the termination. *See Chevron Phillips Chem. Co.*, 570 F.3d at 615. Provided such a reason is proffered, the burden then shifts back to the plaintiff to show that the proffered reason is pretextual. *See id.* Plaintiff has presented no direct evidence of discrimination, and her response brief argues the elements of a *prima facie* case, so the Court examines this claim under the *McDonnell Douglas* analysis.

Defendant further contends that Plaintiff was not qualified for the position she held. Defendant argues that just because Plaintiff could perform certain marginal tasks of her position (staffing the call center), she is not allowed to simply choose the tasks she is able to perform from all the essential tasks of a position. Defendant asserts that allowing Plaintiff to limit her nursing duties to only working in the call center would require Defendant to relieve her of essential functions of her position (direct patient contact). The Court agrees and finds that

Plaintiff has failed to create a genuine issue of material fact as to whether she was qualified for the position held, or any position she later sought to obtain.[6]

It is undisputed that Plaintiff's essential duties as a nurse included patient contact. It is also undisputed that Plaintiff's risks could not be accommodated without relieving her of direct patient contact. Defendant argues that to accommodate Plaintiff would have placed an undue burden on Defendant because Plaintiff, as a nurse, could not perform the essential duties of her job without patient contact or being in contact with other employees that could be vectors for COVID-19. Plaintiff has not directed the Court to admissible summary judgment evidence that creates a genuine issue of material fact that Plaintiff remained "qualified" for the job she held—or any open, available position.[7]

As already discussed above, even assuming that Plaintiff has established a prima facie case of disability discrimination by showing she was "qualified" for the position held or sought, the Court finds that (1) Defendant has clearly demonstrated a legitimate, nondiscriminatory reason for terminating Plaintiff; and (2) Plaintiff has failed to produce any summary judgment evidence to show that this proffered reason was a pretext for discrimination. As such, Defendant is entitled to summary judgment on this claim.

---

[6]While Plaintiff alleges that she was not hired for a position in February 2021 and that this failure to hire is a separate act of discrimination, Plaintiff admits that she was not "fully vaccinated" at the time she applied for the position. At any rate, the evidence shows that Defendant had received sufficient applications from qualified internal applicants. Plaintiff was, therefore, not considered for the position at STAR Center in filling Requisition #449.

[7]Plaintiff has failed to create a genuine issue of material fact that she was denied the opportunity to fill any open, available positions (during a time of great uncertainty and when "stay-at-home" orders were being issued), while being required by her doctors to not have direct contact with any patients.

8

**ADA Retaliation**

Finally, Plaintiff is asserting a retaliation claim under the ADA. 42 U.S.C. § 12203. To establish a prima facie case of retaliation under the ADA, a plaintiff must show that (1) she participated in an activity protected by the ADA; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protective activity and the adverse action. *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013). If the plaintiff can establish this prima facie case, then the burden shifts to the employer to state a legitimate, non-discriminatory reason for the adverse employment action; if such a reason is offered, then the burden shifts back to the plaintiff to demonstrate that the employer's reason is a pretext for retaliation. *Id.* The plaintiff must show that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Id.* "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id.* (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)).

Plaintiff's ADA retaliation claim fails as a matter of law. Even assuming that Plaintiff has established a prima facie case, the Court would still find in favor of Defendant on this claim as a matter of law because (1) Defendant has clearly demonstrated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment; and (2) Plaintiff has failed to produce any summary judgment evidence to show that this proffered reason was pretextual. But most importantly, Plaintiff has failed to create a genuine issue of material fact that she was retaliated against in the termination of her employment or denial of any "positions" for which she

9

applied that would not have occurred "but for" her protected activity.[8] Defendant is entitled to summary judgment on this claim.

## IV. CONCLUSION

For the reasons stated, and essentially for the reasons argued by Defendant, Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. Therefore, Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

SO ORDERED.

Dated June  13 , 2023.

*[signature]*

SAM R. CUMMINGS
SENIOR UNITED STATES DISTRICT JUDGE

---

[8]The Court recognizes that Plaintiff and her doctors were fearful of the possible consequences of her working with direct contact with patients (or anyone who could be a vector for COVID-19). Likewise, the Court recognizes the difficulties faced by employers in retaining qualified employees during such an unprecedented period in which employers were attempting to navigate unknown risks and protect employees that were at high risk for severe complication if infected with COVID-19.